## BENJAMIN LINDAUER ET AL.
### V.
## MOSES M. GRAY ET AL.

ACTION FOR DECEIT.—Where evidence fairly tends to show a cause of action, it is error for the court to instruct the jury to find for the defendan... The court is of opinion that the evidence in this case fairly tended to show cause for an action on the case for deceit, and it was error not to submit it to a jury.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.   Opinion filed January 6, 1886.

Mr. B. M. SHAFFNER, for appellants.

Messrs. MILLARD & SMITH and Mr. WM. J. HYNES, for appellees.

WILSON, J.   This was an action on the case brought by appellants against appellees for deceit.   The declaration contains five counts, the first three charging the defendants with deceit in falsely recommending one Armstrong as fit to be

trusted with goods on credit, knowing him to be insolvent and unworthy of credit, whereby the plaintiffs were injured; the last two counts charging the defendants with a conversion of plaintiffs' goods. There was a jury trial, but at the conclusion of the evidence, the court, on motion of the defendants, instructed the jury to find for defendants, which they did. The plaintiffs excepted and appealed to this court.

The evidence tended to prove the following state of facts: The plaintiffs and defendants were wholesale merchants in Chicago, the former dealing in men's furnishing goods, the latter in groceries. One George N. Armstrong was a lumberman in northern Michigan, where he also kept a stock of goods for sale at retail. He was considerably in debt to appellees for goods, previously bought of them, and had given them a chattel mortgage on his entire stock, as security. Being in Chicago about the middle of December, 1882, he was advised by Kingman, one of appellees' firm, to largely increase his stock. Upon his objecting that he was heavily in debt and a stranger here without credit, Kingman told him he could fix it for him, so that he could stock up his store, and he gave him the names of different houses to apply to, among them appellants'. Armstrong expressed his fears that he could not sell so many goods, but Kingman urged him to buy, telling him to refer to their firm as to his responsibility, but cautioned him not to say anything about the mortgage. Armstrong, acting on Kingman's advice, bought goods of several of the firms named by him. Among others he called upon appellants, whom he did not know, and referred them to appellees as to his standing and credit. Before selling him any goods they sent a letter of inquiry to appellees, as follows:

"Office of Lindauer Bros. & Co., 75 and 77 Wabash avenue, Chicago, Dec. 12, 1882.

"Gray, Burt & Kingman, City.

"SIRS: Please favor us with the information you have regarding the standing, credit, etc., of N. G. Armstrong, Iron River, Mich., and oblige,

"Yours respectfully,

"LINDAUER BROS. & CO."

·To which they received the following reply:

" We give Capt. liberal line, and agree to carry over until he could realize on contracts for cutting logs was finished, when money would be more plenty.   He has quite valuable contract, good trade at store, and with usual good weather should realize handsome profit on winter's work.

" Respect.,

" G., B. & K.

" Consider honest and means to do as he agrees."

The reference being satisfactory appellants sold Armstrong a bill of goods to the amount of $1,022 on four months' credit.

On the 2d day of January following, and before all the goods had reached their destination, appellees authorized one Clark, by written power of attorney, to take possession of the goods covered by their mortgage whenever he should deem them insecure.   Clark went to Michigan and took possession January 5th, removed the sign of Armstrong, substituting in its place that of " Iron River Store, John A. Clark, Manager," changed the bill and letter heads in like manner, and assumed control of the business.   Subsequently, on March 7, 1883, Armstrong, at the request of appellees, executed two other chattel mortgages to them to secure $4,660.03, one covering all the property contained in the Iron River store and the other all the goods and chattels at Armstrong's three lumber camps in Marquette Co., Mich., not included in chattel mortgage of November 18, 1882, as also all goods and chattels that might thereafter be brought into said camps.   The mortgage empowered the mortgagees to sell at public vendue, on giving six days' notice, etc.   The property was sold on the mortgage April 18th following, in the Iron River store, at ten o'clock at night, with the doors locked, Mr. Armstrong, Mr. Kingman and Mr. Clark and a Mr. Mansfield being the only persons present.   Mr. Armstrong acted as auctioneer at the request of Kingman, and Clark bid in the stock for appellees, who had it then shipped to Menominee, Mich., and there disposed of the following August.

Without undertaking to say that the facts as above recited were established beyond controversy, we are of opinion that

the evidence fairly tended to prove them and to support the allegations of the plaintiffs' declaration, and was clearly sufficient to have required the court to submit the case to the jury. As the case is to be sent back for a new trial, we shall refrain from analyzing the evidence, but we have to say, in general, that viewed in the most favorable aspect for the defendants, their conduct was well calculated to invite unfavorable criticism, if not to establish the charge of fraudulent contrivance and deceit. Their reply to appellants' letter of inquiry as to the standing and credit of Armstrong, when viewed in the light of the surrounding circumstances as disclosed by the evidence, is more significant in what it omits to say than in what it says. As merchants and business men, they must have known that had appellants been made aware of the fact that appellees then had a mortgage on Armstrong's entire stock of goods, and that he was heavily in debt, they would not have sold him goods on credit without security. Had appellees purposely designed to mislead appellants, it would seem that their letter could hardly have been more adroitly formulated to produce that result. That it did mislead is demonstrated by the fact that appellants upon the faith of it, sold a bill of goods on credit to an entire stranger who was wholly irresponsible, and was known to be so by appellees when writing the letter. While appellees were under no obligation to furnish appellants with the information asked for, they were bound, if they spoke at all, to speak the truth, especially in view of the fact that Armstrong was already indebted to them more than he could pay; and the suppression of the truth was as hurtful as the expression of a falsehood. Viele v. Goss, 49 Barb. 96; Pasley v. Freeman, Smith's L. C. 166, and cases in notes.

Whether appellees designed by aiding Armstrong to obtain goods from appellants and others on credit and thereby swell his assets, out of which to collect their own demands against him, was a fair subject for discussion before the jury, and they had the right in passing upon the question of intent to take into consideration Kingman's caution to Armstrong not to say anything about the mortgage, as well as the fact that no mention was made of it in the letter to appellants.

Lindauer v. Gray.

Why give this caution except to conceal a fact which it was perceived would almost certainly prevent his obtaining credit? These, as well as other significant circumstances disclosed by the evidence, which it is unnecessary to detail, were matters appellants had the right to have submitted to the jury. They tended to show that appellees' conduct was at variance with the usages of fair dealing business men, and indicative of sinister contrivance and deception.

It is claimed by appellees that there was no sufficient proof that the letter of credit purporting to have been written by appellees was written by their authority, but we think the evidence on that subject was sufficient to have justified the jury in finding that it was so written. Appellants' letter of inquiry was sent by their assistant book-keeper to appellees' office, where he presented it to appellees and received the answer, the letter in question, which he took back to appellants; and neither one of appellees denied upon the trial that it was written by their firm.

But it is not necessary on this appeal to demonstrate that the evidence was sufficient to show a cause of action; it is enough that it fairly tended to do so, and that appellants had reasonable grounds for contending that they had made out their case. In actions of this nature, whether there is fraud or not, is a question of fact peculiarly within the province of the jury to decide.

The judgment of the court below is reversed and the cause remanded for a new trial.

Reversed and remanded.